IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Jessica Drake, *et al.*, | : | |
| Plaintiffs | : | Civil Action 2:10-cv-00137 |
| v. | : | Judge Sargus |
| Village of Johnstown., *et al.*, | : | Magistrate Judge Abel |
| Defendants | : | |

# ORDER

This matter is before the Magistrate Judge on plaintiffs Jessica and Jack Drake's August 1, 2011 motion to compel defendant John Berryhill to give testimony regarding certain matters (doc. 27).

## I.  Allegations in the Complaint

The amended complaint makes the following allegations. Jessica and Jack Drake owed approximately $200 in income taxes to the Village of Johnstown. They did not have the ability to pay the taxes. In October 2007, they appeared in the Village's Mayor's Court and pleaded no contest to violating the Village's income tax ordinance. On February 12, 2009, defendant John Berryhill, in his capacity as Mayor's Court Magistrate, issued a warrant for the arrest of Jessica Drake. No arrest warrant was ever issued for Jack Drake. At about 9:10 p.m. on February 17, 2009, Newark police officers came to the Drakes' home and arrested both Jessica and Jack Drake. The Drakes were

1

unable to post $500 bonds to avoid incarceration. They remained in jail, without being presented for an initial appearance, until the evening of February 19. Then Jessica Drake appeared before Berryhill and was directed to discuss arrangements to pay the delinquent taxes. She was warned that if she did not pay the taxes, "we'll put you back in jail again." Amended Complaint, ¶ 57. Claims are pleaded for deprivations of procedural and substantive due process, conspiracy to create a debtors prison to aid the Village of Johnstown to collect taxes, and false arrest.

While incarcerated, Jessica Drake was denied medication for medical conditions. She was denied food to help her manage her diabetes. She suffered a claustrophobic episode.

## II. Arguments of the Parties

### A. Plaintiffs

During plaintiffs' deposition of defendant, Berryhill invoked a judicial immunity based privilege and refused to testify about his thought processes concerning his judicial acts. Berryhill testified about what he did but refused to testify about why he did it. Plaintiffs argue that the doctrine of judicial immunity is not a privilege against giving testimony. Plaintiffs maintain that they are entitled to an explanation for why they were arrested, why the bail was set at twice the amount of the unpaid taxes, why they remained in jail for two days, and why the proceedings that concluded that jail time were undertaken in private rather than in public. All of these issues are relevant to their claim that defendants violated plaintiffs' rights to due process of law.

Plaintiffs argue that the potential defense of judicial immunity does not preclude him from giving testimony. Plaintiffs rely on *Neiman v. Keane*,No. 98-C-3209, 1999 WL 117694,  (N.D. Ill. Mar. 1, 1999), in which the court compelled a judge and a prosecuting attorney to testify despite their claim to immunity in a Section 1983 case.

Plaintiffs further argue that even if the Court determines that a judicial immunity privilege exists, Berryhill is not entitled to judicial immunity in this case. Plaintiffs maintain that Berryhill was acting as a tax collector, rather than a judge, when he issued warrants for their arrests. The former Village tax director, Karen Wilson, acknowledged that complaints about tax delinquencies were filed in Mayor's court to use the threat of jail time to gain a priority in payment over other creditors. Berryhill testified that he diverted delinquent taxpayers into an administrative process from a judicial process. Berryhill's deposition testimony revealed that he did not view his position as a neutral; rather he was aligned with the Village's tax collection efforts. He testified that, "we were interested not in punishing the people, but in getting revenue for the Village." He acknowledged plaintiffs' allegation in the complaint that he stated to Ms. Drake, "[w]e're tired of dicking around with you [on the delinquent taxes]. It's been so many years." Plaintiffs further contend that Berryhill acted more as an adviser than a judge by engaging in informal discussions with Wilson. Their cases did not appear on the docket for February 12, 2009, and it appears that they were summoned to the Village offices for an administrative rather than judicial purpose. On February 19, 2009, Berryhill met with

3

Ms. Drake in private rather than in open court, and he failed to bring Mr. Drake before him before ordering him to be released from jail.

Plaintiffs argues that even if Berryhill's conduct could be construed as judicial in nature, he acted in complete absence of all jurisdiction, which would eliminate any judicial immunity to which he might have been entitled. Plaintiffs maintain that the Village has not produced a copy of any complaint that was filed in either case number 07-OTH-00104 or case number 90-OTH-00003, the two cases in which the January 12, 2009 notices to appear were issued. Plaintiffs assert that there is no evidence that a summons and complaint was issued in either case or that a summons was returned in either case. As a result, according to plaintiffs, jurisdiction was wholly lacking. Village records indicate that case number 09-OTH-00003 was dismissed on February 13, 2009 prior to plaintiffs' arrest. Case number 08-OTH-00104 was dismissed on February 28, 2008 and October 23, 2008. Berryhill issued orders in case numbers 07-OTH-00072 and case number 08-OTH-00104 following his meeting with Ms. Drake on February 19, 2009, but there is no evidence indicating successful return of summons in either case.

  **B.**  **Defendants**

Defendants maintain that Berryhill should not be compelled to testify as to his mental processes in arriving at a judicial decision. Defendants rely on *Perkins v. Lecureux*, 58 F.3d 214, 220 (6th Cir. 1995), in which the Sixth Circuit acknowledged the firmly established rule that a judge may not be asked to testify about his mental processes in reaching a judicial decision. This testimonial privilege has even been

4

extended to the testimony of non-judicial officials. Defendants contend that the Sixth Circuit has described testimony concerning a judicial decision as "inherently suspect." *Id*. The finality and integrity of judgments would be threatened by a rule that enabled parties to attack a judgment by probing the mental processes of a judge.

Defendants maintain that Berryhill testified concerning events that transpired, but plaintiffs are not permitted to question him about the mental processes he engaged in while making judicial decisions in the case.

Defendants further argue that Berryhill is entitled to the protection of judicial testimonial privilege. According to defendants, nothing in the record indicates that Berryhill is not a "legitimate judge." In order for the Village of Johnstown's Mayor's Court to be acting in the absence of jurisdiction, the matter upon which Berryhill was acting would have to be clearly outside the subject matter if the court. Here, plaintiffs were ordered to appear in the Village of Johnstown's Mayor's Court to respond to charges that they violated an ordinance of the Village of Johnstown. Berryhill had jurisdiction over the matter as he was appointed magistrate of the Mayor's Court.

### III.     Discussion

Plaintiffs rely on *Neiman v. Keane*, No. 98-C-3209, 1999 WL 117694, (N.D. Ill. Mar. 1, 1999). In *Neiman*, the plaintiff filed a complaint against a police officer alleging that he acted willfully, maliciously, and without probable cause in having two criminal charges brought against him. The prosecutor ultimately dismissed both criminal charges against the plaintiff. The plaintiff sought to depose the judge to determine why

5

she had dismissed the charges against him in her former role as an assistant state attorney. The judge was not named as a defendant in the action. The court permitted the plaintiff to depose the judge because the plaintiff had the burden of proving that the charges were dismissed for reasons consistent with his innocence in order to prevail on his malicious prosecution claim. The plaintiff was also permitted to depose another prosecutor who prepared the criminal information against him after consulting with the police officer who allegedly maliciously initiated criminal proceedings against him.

Defendants insist, however, that *Perkins v. Lecureux*, 58 F.3d 214 (6th Cir. 1995) controls. In this case, Perkins filed a petition for habeas corpus asserting that his guilty plea was involuntarily induced by the promise of the sentencing judge to revisit his sentence in a few years once the publicity surrounding the crime had diminished. In a habeas corpus action filed by on one of Perkins' co-defendants, the sentencing judge testified in an evidentiary hearing that when he sentenced the three co-defendants he decided he was "going to send a message back to the black community to stop this kind of senseless killing in connection with robberies." *Id.* at 217. Based on this testimony, the magistrate judge concluded that the habeas petition had merit and that the judge's testimony reflected direct evidence of purposeful discrimination against him because of his race. On appeal, the respondent objected to the magistrate judge's reliance on the testimony of the sentencing judge. The Sixth Circuit, troubled by the district court's decision to rely on a statement made by the judge regarding his thought processes at the time of the sentencing, reversed the lower court:

> It is a cardinal principle of Anglo-American jurisprudence that a court speaks only through its minutes. Ninety-one years ago the Supreme Court announced the rule that testimony of the mental processes of a judge was not to be considered:
>> [T]he testimony of the trial judge given six years after the case has been disposed of, in respect to matters he considered and passed upon, was obviously incompetent. . . . *A judgment is a solemn record. Parties have a right to rely on it. It should not lightly be disturbed, and ought never to be overthrown or limited by the oral testimony of a judge or juror of what he had in mind at the time of the decision.*
>
> *Fayerweather v. Ritch*, 195 U.S. 276, 306-07, 25 S.Ct. 58, 67, 49 L.Ed. 193 (1904) (emphasis added).
>
> The *Fayerweather* rule is still good law. The Eleventh Circuit relied upon it in 1982 in holding that a district court should not have considered a trial judge's post-decision statements concerning the influence various facts had on his decision. " Such post-decision statements by a judge or juror about his mental processes in reaching decision may not be used as evidence in a subsequent challenge to the decision." *Proffitt v. Wainwright*, 685 F.2d 1227, 1255 (11th Cir. 1982) (emphasis added).

*Perkins v. LeCureux,* 58 F.3d 214, 220 (6th Cir. 1995). *See also United States v. Crouch*, 566 F.2d 1311, 1316 (1978)("A judge's statement of his mental processes is absolutely unreviewable. The court has no means of observing mental process . . . The trial judge's statement of his mental process is so impervious to attack that even if he were to come forward today and declare his memorandum misstated his reasons for the mistrial, we could not consider his explanation."); *Washington v. Strickland*, 693 F.2d 1243, 1263 (5th Cir.1982)("It is a firmly established rule in our jurisprudence that a judge may not be asked to testify about his mental processes in reaching a judicial decision.); *Morrison v. Kimmelman*, 650 F. Supp. 801, 807 (D.N.J.1986)("When a verdict is rendered, neither the judge nor the jury is asked for justifications. The decision may be reviewed and reversed, modified or amended. However, the trier of fact is not to be placed on the witness stand

and cross examined as to the reasons for the outcome, absent evidence of improprieties in the decision making process itself.").

In *U.S. v. Morgan*, 313 U.S. 409 (1941), the Supreme Court found that the district court erred in permitting the deposition of the Secretary of Agriculture and allowing him to be questioned at trial regarding the process by which he reached the conclusions of his order, including the manner and extent of his study of the record and his consultation with subordinates:

> [The Secretary's] testimony shows that he dealt with the enormous record in a manner not unlike the practice of judges in similar situations, and that he held various conferences with the examiner who heard the evidence. Much was made of his disregard of a memorandum from one of his officials who, on reading the proposed order, urged considerations favorable to the market agencies. But the short of the business is that the Secretary should never have been subjected to this examination. The proceeding before the Secretary 'has a quality resembling that of a judicial proceeding'. *Morgan v. United States*, 298 U.S. 468, 480, 56 S.Ct. 906, 911, 80 L.Ed. 1288. Such an examination of a judge would be destructive of judicial responsibility. We have explicitly held in this very litigation that 'it was not the function of the court to probe the mental processes of the Secretary'. 304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L.Ed. 1129. Just as a judge cannot be subjected to such a scrutiny, compare *Fayerweather v. Ritch*, 195 U.S. 276, 306, 307, 25 S.Ct. 58, 67, 49 L.Ed. 193, so the integrity of the administrative process must be equally respected. *See Chicago, B. & Q. Ry. v. Babcock*, 204 U.S. 585, 593, 27 S.Ct. 326, 327, 51 L.Ed. 636.

*U.S. v. Morgan*, 313 U.S. 409, 421-422 (1941).

Plaintiffs' reliance on *Neiman v. Keane* is misplaced. In *Neiman*, the judge was not being deposed in her role as a judge. Rather, the plaintiff sought to depose her concerning her actions as a prosecutor. Here, plaintiffs acknowledged that ordinarily a judge should not be compelled to testify as to his thought processes, and this general

8

rule governs this case as well. Plaintiffs may not question Berryhill concerning his thought processes underlying his judicial decisions.

Plaintiffs assert that they want to depose Berryhill to establish what decision were made and the reasons for those decision because a normal judicial record does not exist for these proceedings in Mayor's Court. Plaintiffs have obtained Berryhill's account of his decisions. They are not entitled to his after the fact explanation of why he made those decision.

To the extent that plaintiffs' argument is that these were not judicial proceedings, and that, consequently, judicial immunity does not apply, this decision assumes that Berryhill was acting in his capacity as Mayor's Court Magistrate and that his actions were colorably judicial. Should the trial judge determine, after hearing the evidence, that Berryhill was not acting in a judicial capacity, then plaintiffs may well be entitled to depose him about the reasons for his decisions.

**IV.    Conclusion**

Plaintiffs Jessica and Jack Drake's August 1, 2011 motion to compel defendant John Berryhill to give testimony regarding certain matters (doc. 27) is DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P., and Eastern Division Order No. 91-3, pt. F, 5, either party may, within fourteen (14) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by the District Judge.  The motion must specifically designate the Order, or part thereof, in question and the basis for any objection thereto.  The District Judge, upon

9

consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

s/ Mark R. Abel
United States Magistrate Judge